## CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant, v. LITTLE TARKIO DRAINAGE DISTRICT NO. ONE.

### In Banc, July 15, 1911.

1. **REMOVAL OF CAUSE TO FEDERAL COURT: Application Not Timely: Drainage District.** An application by a railroad company, in a drainage district case, for the transfer of the cause to the Federal court, not filed in the trial court until after the commissioners had filed their report assessing damages and benefits, which was two years after the suit was instituted and after the lapse of several terms of court, is not timely made and should for that reason be overruled. The application should be presented on or before the third day of the term of the court to which the suit is brought. The filing of the report of the commissioners is not the beginning of the suit as to the landowner.

2. **DRAINAGE DISTRICT: Condemnation: Trial by Jury.** The right of the landowner to a trial by jury, upon timely exceptions filed to the report of the commissioners of the drainage district appointed to assess benefits and damages, cannot be denied, where his property was taken for ditches and drains. And the report of the commissioners showing that lands of the railroad company were "necessary to be taken and were taken and condemned for a right of way of the main drainage ditch and laterals aforesaid," and that they assessed the railroad company's damages, for "railroad bridge, $9,000; right of way of main drainage ditch across railroad, $250; and delay in operation to railroad company, $750; total, $10,000," on its face shows the proceeding involved the power of eminent domain, and the court erred in holding that the law of eminent domain does not apply to such a case.

3. ———: ———: ———: **Report Modified so as to Strike Out Damages.** Where the commissioners' report designated certain lands of the railroad company "taken and necessary to be taken for the main drainage ditch," and assessed its damages therefor at $10,000, and its benefits at $16,000, leaving $6,000 as the benefits it should pay, and the court struck out the $10,000 damages and reduced the benefits to $10,000, and then confirmed the report as modified, the railroad company's land has been taken, and the power of eminent domain was necessarily involved, and the trial court erred in refusing to the railroad a right of trial by jury to determine the damage.

Appeal from Holt Circuit Court.—*Hon. William C. Ellison,* Judge.

REVERSED AND REMANDED.

*O. M. Spencer* and *H. J. Nelson* for appellant.

(1) The court erred in refusing to order removal of case to Federal court: (a) A drainage district proceeding is removable when necessary diversity of citizenship exists and amount in controversy is sufficient. Regardless of whether by this proceeding any land is condemned, the proceeding is similar to a condemnation proceeding, the purpose being to assess benefits and damages, and section 5518 of Drainage Laws provides for same procedure as in railroad condemnation cases. 34 Cyc. 1227; 18 Ency. Pl. & Pr. 221; Moon Removal Causes, sec. 144; Traction Co. v. Mining Co., 196 U. S. 248; Pacific Removal Cases, 115 U. S. 1; Railroad v. Railroad, 141 Fed. 582. (b) The drainage district is a public corporation, being so declared by statute. Sec. 5499, R. S. 1909. A "public corporation" is a "municipal corporation" —merely interchangeable terms. 23 Am. & Eng. Ency. Law, 311; Covington v. Kentucky, 173 U. S. 242; New Orleans v. Water Works, 142 U. S. 91. A municipal corporation is a citizen of the State of its incorporation for purpose of removal, and has always been so considered by the courts, and cases are continually being removed on citizenship of a city, county, drainage district, etc. 18 Ency. Pl. & Pr. 188; Moon Removal Cases, sec. 126; Cowles v. County, 7 Wall. 161; Pacific Removal Cases, 115 U. S. 1. (c) The necessary separable controversy exists because the proceeding is a separate controversy as to each piece of property involved. 18 Ency. Pl. & Pr. 221; Moon Removal Cases, sec. 144; Railroad v. Railroad, 141 Fed. 582; Sugar Creek v. McKell, 75 Fed. 34; Pacific Removal Cases, 115 U. S. 1. (2) The court erred

in refusing the railroad a trial by jury on the issue of
damages raised by the exceptions of the drainage dis-
trict, for the following reasons: (a) The drainage
statute provides that this proceeding shall be in ac-
cordance with the general condemnation statute of
the State, and it has always been held by this court
that the filing of exceptions to an award of damages
gives (and is provided for the very purpose of giving)
the right of trial by jury on the question of damages.
Sec. 5518, R. S. 1909; Railroad v. Story, 96 Mo. 619;
Railroad v. Woodard, 193 Mo. 656; Railroad v. Wyatt,
223 Mo. 354. Verbal demand is sufficient. Railroad
v. Cox, 41 Mo. App. 502. (b) But if it should be held
that said provision of the drainage statute is not to
be construed as specifically providing for right of trial
by jury, and if it should be held that the provision of
section 5518, which says the exceptions "shall be heard
by the court and determined in a summary manner,"
does not entitle the railroad company to a trial by jury,
then said statute is void because it deprives the rail-
road company of its constitutional right of trial by
jury, and deprives it of due process under the law
and equal protection under the law as guaranteed to
it by the Federal Constitution. The very provision
for an award of damages assumes that property is
taken for which payment must be made, and if taken,
then the constitutional guarantees of right of trial by
jury are inviolate. Sec. 28, art. 1, Constitution of
1875, provides that "right of trial by jury as hereto-
fore enjoyed shall remain inviolate." At the time of
the adoption of said Constitution the law of Missouri
provided for trial by jury in condemnation proceed-
ings. R. S. 1879, sec. 896; Laws 1873, p. 24. (c) And
even if it be true that the right of way is not being con-
demned in this proceeding, still appellant was en-
iitled, under Sec. 2367, R. S. 1909, to a jury trial on
question of its damages, because Sec. 2364 so provides.
And this court has so held. St. Louis v. Buss, 159 Mo.

12. (3) But if the court be correct in its holding that this proceeding for the award of damages is not a condemnation proceeding, then it should have amended the report of the commissioners by expunging therefrom the statements that they condemned right of way for ditch across the railroad right of way and awarded damages therefor.

*H. B. Williams* and *Frank Petree* for respondent.

(1) The trial court did not err in refusing to order removal of cause to the Federal court. (a) The application for removal was based for removal on diversity of citizenship, and should have been made before or at the time fixed by the statute of the State to answer, demur or plead. Railroad v. Cave, 50 Fed. 637; Railroad v. Nestor, 50 Fed. 1; Bank v. Appleyard, 138 Fed. 939; Martin v. Railroad, 151 U. S. 673; Doyle v. Beaufre, 39 Fed. 289; Trust Co. v. Newport, News & M. V. Co., 70 Fed. 403. (b) Sec. 5518, R. S. 1909, requires any land or property owner in the drainage district to file their exceptions to the commissioners' report assessing benefits and damages, within ten days after said report is filed, and this is the only pleading required. When appellant failed, as he did, to file his application for removal to Federal court, within that ten days, he waived any right to afterward do so. (c) A subsequent pleading not filed within the time prescribed by statute tenders no issue that can be inquired into on hearing of original, that filed out of time being of no force and effect in law. Fusselman v. Railroad, 139 Mo. App. 199. (d) The filing of a supplemental pleading has no effect except to abandon the first pleading, as to all matters not restated in the supplemental pleading. Therefore all pleadings filed by appellant after the expiration of the time given by the statute to file exceptions to the commissioners' report amounts to abandonment of the

exceptions first filed, if they have any effect at all. Kortzendorfer v. St. Louis, 52 Mo. 204; Fusselman v. Railroad, 139 Mo. App. 199. (2) The court did not err in refusing to grant appellant a jury trial on the issues involved in the exceptions to the commissioners' report. (a) The drainage district is not seeking to take exceptors' land in this action. Said district is not attempting, in this action to exercise the power of eminent domain. Said district, in this action, has only ascertained values as a basis of taxation for local improvements. (b) A city takes property of a citizen for a public street under the power of eminent domain. It raises money to make compensation therefor upon property that is specially benefited by the improvement. There is no law, constitutional or statute, requiring the benefits to be ascertained by a jury. St. Louis v. Buss, 159 Mo. 12. Assessments for public improvements are regarded as a species of taxation, and property owners are not entitled to have the assessments for taxation made by a jury. 24 Cyc. 133; Land Co. v. Miller, 170 Mo. 240; Heman v. Schulte, 166 Mo. 409. Corporations formed under the drainage law are governmental agencies created to perform a work of general utility. Nauman v. District, 113 Mo. App. 575; Land & Stock Co. v. Miller, 170 Mo. 253.

WOODSON, J.—This is an appeal taken by the railroad company in the case of In re Drainage District v. Richardson.

Richardson has appealed the case to this court twice. The opinion written on the first appeal is reported in the 227 Mo. 252, and the second opinion has just been handed down, and reported at page 49 of 237 Mo.

Reference is here made to that case for the purpose of seeing a full statement of the facts.

Counsel for this appellant present not only the

questions presented by the Richardson appeal, but three additional, which are peculiar to it.

We will not again discuss the questions passed upon in the Richardson case, but will confine our considerations to the points affecting this appellant alone; and will therefore only state so much of the record as bears upon these questions.

The commissioners appointed, by the court, to assess the damages and benefits which would result to the landowners, for the land to be taken, or damaged for the use of the district, made their report and filed it with the clerk of the circuit court, and in so far as it is applicable to the questions presented by this appeal, it is as follows:

"We herewith submit to the court a schedule list and statement of each and every of the owners of land owning land within said drainage district, with a description of the land owned by each and the amount of benefits accruing to the same shown thereon, and have also shown the amount of damages assessed to each owner by reason of the condemnations of right of way and other damages accruing thereto separately, deducting from the total benefits the total amount of damages, and have shown in our reports separately the net benefits accruing to each tract of land, returned herewith, marked 'Exhibit A,' and made a part hereof.

"We find that the Chicago, Burlington & Quincy Railroad Company has and owns a right of way running through sections 13 and 24, township 62, range 40, and sections 19, 20 and 29, township 62, range 39, Holt county, Missouri, in said drainage district, with a railroad roadbed in said railroad right of way.

"In the performance of our duties, and in the assessment of the benefits and damages aforesaid, we took into consideration in connection therewith all other drains, dykes, ditches or levees heretofore constructed within the boundaries of said drainage dis-

trict, and we have also examined all streams, water courses, ditches, ponds, lakes and bayous within the district, which are partly within and partly without said drainage district, and we have also examined all railroad rights of way, culverts, bridges and grades, and all other railroad property in said drainage district, and we have also inspected and examined all other improvements, highways and bridges belonging to any county or corporation which may be affected by the proposed drainage and reclamation works and improvements; and we have also prepared a statement of the estimated cost of the works and improvements to be made in said drainage district for the protection and reclamation of the properties above named, situated and being in said drainage district; and we have also assessed all damages which will accrue or may accrue to the county for the taking of any right of way necessary for the construction and completion of said drainage work.

"Our estimate of the cost of the whole work proposed in the plan of drainage aforesaid is as follows:

| | |
|---|---:|
| Main drainage ditch ....... 350,000 cubic yards | |
| Lateral number one ........ 2,066 cubic yards | |
| Lateral number two ........ 700 cubic yards | |
| In all .... 352,766 cubic yards ...... | $31,832.00 |
| Two bridges across public highways .. | 1,500.00 |
| Levee on west boundary of drainage district, 5,720 cubic yards ........ | 600.00 |
| Railroad bridge .................... | 9,000.00 |
| Right of way for main drainage ditch across railroad .................. | 250.00 |
| Delay in operation to the railroad company ............................ | 750.00 |
| Engineer's salary, first year ...... | 100.00 |
| Engineer's salary, second year ...... | 600.00 |
| Attorney's fees first year .......... | 1,250.00 |
| Attorney's fees second year ........ | 1,250.00 |

| | |
|---|---:|
| Salary of secretary and treasurer, 1st and 2d year | 250.00 |
| Salary of secretary and treasurer, 18 years | 350.00 |
| Court costs | 1,000.00 |
| Expenses of commissioners | 150.00 |
| Organization and other incidental expenses | 2,500.00 |
| Cleaning brush and debris out of Big and Little Tarkio in and bordering upon drainage district | 2,500.00 |

$53,882.00

"We further report to the court that the following described tracts of land belonging to the parties respectively named were found necessary to *be taken and were taken and condemned for right of way* for main drainage ditch and laterals aforesaid, to-wit:"

Then follows a detailed description of the various ditches which were to be dug, which is not here material, except as follows:

"*Chicago, Burlington & Quincy R. R. Company.*

"A strip 50 feet wide on each side of, parallel to and measured at right angles to the center line of the main ditch as shown on the plan of drainage of said district, across the right of way of said railroad in the northwest quarter of section 29, township 62, range 39.

"*Lateral Ditch Number Two.*

"Commencing at the end of a private ditch at the intersection of the wagon road and the Chicago, Burlington & Quincy Railroad, on the half section line running north and south through section 19, township 62, range 39; thence southeasterly along the north boundary of the railroad right of way to a railroad bridge or culvert; thence southwesterly through said bridge and across the right of way of said rail-

road; thence in a southerly direction along slough to the Big Tarkio River.

"*Landowners,* and description of land taken belonging to each for the right of way for Lateral Ditch No. 2. . . .

"*Chicago, Burlington & Quincy Railroad.*

"A strip of 10 feet wide on each side of, parallel to and measured at right angles to the center line of said lateral ditch, where the same crosses the right of way of the railroad, through said section 19, township 62, range 39."

So much of 'Exhibit A' of commissioners' report as is pertinent to this appeal is in words and figures as follows:

"Name of Owner: Chicago, Burlington & Quincy Railroad Co.

"Real Estate: A right of way for railroad over strip of northwest corner of section 19, township 62, range 39, one hundred feet wide, the center line commencing 157 links south of northeast corner of section 24, township 62, range 40; thence north 47.75 degrees west to north line of section; and over strip one hundred feet wide, the corner line commencing three chains south of northwest corner of section 19, township 62, range 39; thence south 47.75 degrees east about 44.66 chains to intersection with south line of original drainage district, 10 chains north of south line of section; and over strip 100 feet wide across the southeast quarter and the east ten acres of southwest quarter of section 13, township 62, range 40, the center line commencing three chains south thence north 47 degrees west to west line of east ten acres of said southwest quarter; and over strip 100 feet wide, the center line beginning 175 feet east of northwest corner of section 29, township 62, range 39; thence south 47.75 degrees east 6,900 feet to east line of section; and over strip one hundred feet wide, the center line beginning 159 feet north of southeast corner of sec-

tion 19, township 62, range 39; thence north 47.75 degrees west to north line of the south 40 acres of the southeast quarter of said section; and over a strip one hundred feet wide, the center line beginning 159 feet north of southwest corner of section 20, township 62, range 39, thence south 47.75 degrees east to south line of said section; being the right of way of the said road, from a point on the west line of the west 10 acres of southwest quarter of section 13, township 62, range 40, in a southeasterly direction through said district to its intersection with the south line of said district about three hundred feet east of the center of section 29, township 62, range 39, being 2.79 miles in length.

"Total amount of damage ........... $10,000.00
Total amount of benefits ............  16,000.00
Amount of benefits allowed less damages assessed ...................  6,000.00"

The following is taken from the statement of the case made by counsel for appellant, which is supported by the record, to-wit:

"Notice of the filing of said report was issued and published by the clerk of the circuit court, and under the law the time within which exceptions might be filed to said report expired on the 15th day of August, 1910, and upon that date the respondent drainage district filed its exceptions to said award of damages on specified grounds, to-wit, that Railroad Company is not entitled to any award of damages; that it is the duty of the Railroad Company to construct a bridge for said ditch without compensation, and asked that the said award of $10,000 damage be stricken out. The next term of the circuit court of Holt county commenced one week from the date of the filing of said exceptions by drainage district, to-wit, August 22, 1910, and on said day the appellant Railroad Company filed its petition and bond in removal in due form, asking that said controversy be removed to the Federal court, which petition for removal the

court denied on the ground that it was filed too late, claiming that it should have been filed at the time of the original incorporation of the drainage district. The court thereupon set the case for trial at an adjourned term, and when said cause came on for hearing, September 23, 1910, the Railroad Company filed a reply to said exceptions containing a plea to the jurisdiction on the ground that the cause was in fact pending in the Federal court and because the Honorable W. C. Ellison, the judge of said court, had disqualified himself from sitting in the cause, which plea to the jurisdiction the court overruled. Said reply also alleged the drainage law to be unconstitutional, and asked for damages in the sum of $30,000. Appellant also asked for a trial by jury, which the court denied and proceeded to hear the cause itself.

"The court announced that it would hear the question of damages on the exceptions of the drainage district thereto along with the question of benefits on the exceptions of the Railroad Company thereto, and during the trial evidence was heard showing the manner of the crossing of the ditch under the railroad, the size of bridge and raise of railroad track necessary therefor, that where the main ditch is planned to cross under the railroad the railroad has a solid earth embankment and there is no water course, that the Railroad Company has a large bridge over present ditch, etc."

The drainage district introduced no evidence on the question of damages, and the court with nothing before it, except the report of the commissioners showing what the award of damages to the railroad company was for, refused evidence offered by it on that question, and proceeded to strike out the award of $10,000 damages made by the commissioners to it. The court then modified the report of the commissioners in that respect, and confirmed it without striking out of it that part pertaining to

the condemnation of a right of way under said railroad.

The appellant duly objected, and saved its exceptions to all of said rulings of the court.

And in due time it filed its motion for a new trial and in arrest of judgment, which was by the court overruled, and appellant duly appealed the cause to this court.

The complaint of appellant, to the rulings of the trial court, is tersely stated in the following language:

"Briefly stated, the Railroad Company complains herein that the court erred in retaining jurisdiction of the cause, not only because it had been duly removed to the Federal court, but because the Honorable W. C. Ellison, the regular judge of said court who tried said cause, had no jurisdiction so to do for the reason that he had disqualified himself from sitting in the cause. The appellant also complains that it was deprived of the right of trial by jury, complains that it was deprived of any trial whatever in this branch of the case, complains that the court erred in striking out the award of damages made this appellant by the commissioners, and that the court erred in failing to so change the report of the commissioners as to expunge therefrom all reference to right of way condemned by the commissioners as the court was in duty bound to do if it had the right to strike out said award of damages upon the ground claimed by it, to-wit, on the ground that this is not a condemnation proceeding and that the commissioners had no right to condemn any right of way for a ditch in this proceeding and no right to award any damages for such right of way."

I. The first error assigned by counsel for appellant challenges the correctness of the ruling of the trial court in refusing to transfer the case to the cir-

237 Sup.—7

cuit court of the United States, in and for the St. Joseph Division of the Western District of Missouri.

The record shows that the application for the transfer was not filed in the trial court, until after the commissioners had filed their report, assessing the damages and benefits against the various tracts of land situate in the district, which was some two years after the suit was instituted and after the lapse of several terms of the court.

Clearly this application was not timely made, and the trial court for that reason alone properly refused to make the transfer. The act of Congress authorizing the removal of a cause from a State to the Federal court, requires the application therefor to be filed in the former court on or before the day on which the moving party is required to appear and plead. [Black's Dillon on Removal of Causes, page 15.]

According to that act the application should have been presented to the circuit court of Holt county in 1908, and on or before the third day of the term of the court to which the suit was brought. [Sec. 1799, R. S. 1909.]

Counsel for appellant are evidently laboring under the erroneous impression that the filing of the report of the commissioners, was the beginning of the suit as to their client. The filing of the report, and exceptions thereto, are but remote steps in this class of cases, long after the time when the parties thereto were required to plead. [State ex rel. v. Wilson, 216 Mo. 215; In re Drainage District v. Richardson, 237 Mo. 49, by this court In Banc.]

We therefore rule gainst the appellant upon this assignment.

II. Counsel for appellant next complain of the action of the trial court in denying to it a trial by jury.

This was error, as was held by us in the case of In re Drainage District v. Richardson, supra. It was also error for the further reason that section 4 of article 12 of the Constitution in express terms guarantees to a railroad company a right to a trial by jury, when its property is sought to be taken or damaged under the power of eminent domain.

Counsel for respondent, for last reason stated, do not seem to question the right of a railroad company to demand a trial by jury, where its property is proposed to be taken for public use under the power of eminent domain, but insist that no such question is involved in this case.

We are unable to lend our concurrence to that insistence, for the reason that the report of the commissioners as filed shows that they found that lands of the appellant were "necessary to be taken and were taken and condemned for right of way of main drainage ditch and laterals aforesaid;" and that they assessed appellant's damages for "Railroad bridge, $9,000; Right of way for main drainage ditch, across railroad, $250; Delay in operation to the railroad company, $750.00." Making a total of $10,000.

The report also shows that the commissioners assessed benefits amounting to $16,000 against the appellant, and deducted the former from the latter, thereby leaving a balance of $6,000 of benefits assessed against appellant. On exceptions of respondent the court disallowed the $10,000 damages awarded appellant; and on the exceptions of appellant the court reduced the benefits assessed against it from $16,000 to $10,000, and modified the report accordingly, but in no other respect. Then follows the decree in the usual form, and so much of it as is here pertinent, reads as follows:

"As to the objections of the C. B. & Q. Railroad Company, and the objections of the Drainage District with reference to said Railroad Company, the court

declares the law to be that no damage alleged or
claimed to result or arise by reason of the necessity
for additional bridges can be considered in this pro-
ceeding.

"And the court further declares the law to be that
as to all claims of damages for additional bridges, or
raising of tracks, the same must be considered only
in a condemnation proceeding, which is not involved
in the matter now before the court.

"The court further declares the law to be that
the only damage which can be considered in this pro-
ceeding is such as the evidence may show will result
in the way of diminishment of the permanent value
of the railroad bed and track thereof, by reason of
the construction of the ditch. And the court finds
that there is no evidence showing any such permanent
injury.

"The court further finds from the evidence that
the benefits derived from the ditch of the Railway
Company and to its roadbed through said Drainage
District, and secured by reason of the construction of
said improvements and works, in affording drainage
and giving an outlet for drainage, protection from
overflow and damage from water, is ten thousand
dollars.

"It is therefore ordered, adjudged and decreed by
the court that the report of the commissioners, filed in
this proceeding, be and the same is hereby modified,
altered and corrected in accordance with the forego-
ing findings, and as so modified and corrected, the re-
port of said commissioners is confirmed."

It is thus seen, that while the court struck out and
disallowed the $10,000 damages awarded appellant,
and stated in the decree that "the same must be con-
sidered only in a condemnation proceeding, which is
not involved in the matter now before the court;"
nevertheless the report of the commissioners shows
that they condemned appellant's property for the

uses of the district, and the decree of the court confirms that report, modified, in that regard; and as thus confirmed, if it means anything, it means that the right of way for the ditches across appellant's property has been established and that respondent is authorized to take posession of the same for the purposes mentioned. If not, why then, was the $10,000 assessment made against appellant for benefits it would receive from the construction of the ditches described in the report? That judgment was final, and if it had not been appealed from, it could have been enforced against appellant, and the $10,000 adjudged thereby could have been collected, even though subsequent condemnation proceedings had never been instituted by respondent.

The court may have intended differently; however, this record does not show that intention, but upon the controversy it does affirmatively show that the property of the appellant has been appropriated by respondent for drainage purposes, without compensation, and it has been assessed $10,000 for the benefits it will receive from the construction of the ditches which must pass over and along plaintiff's property.

Such procedure was erroneous, and cannot be tolerated.

III. Counsel for appellant finally complain of the amount of the assessment of benefits made against it. It is claimed that $10,000 is grossly excessive.

We will not pass upon that question now, for the reason that the judgment must be reversed and the cause remanded for another trial, and if excessive, that error can be corrected by the trial court.

For the reasons stated in this and in the opinion in the Richardson case, the judgment is reversed and the cause remanded to the circuit court for further proceedings. All concur, except *Kennish, J.,* who dissents, and *Graves, J.,* who expresses no opinion.